UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SAWANYA LASHUN STANLEY,<br><br>    Plaintiff,<br><br>    v.<br><br>MARTIN O'MALLEY COMMISSIONER OF SOCIAL SECURITY, et al.,<br><br>    Defendants. | Case No. 24-cv-08776-RS<br><br>**ORDER GRANTING REMAND FOR CALCULATION AND AWARD OF BENEFITS** |

## I. INTRODUCTION

Plaintiff Sawanya Lashun Stanley appeals the decision of the Commissioner of Social Security ("the Commissioner") denying her disability benefits under the Social Security Act ("SSA"). An administrative law judge ("ALJ") reviewed her application and determined she was not disabled and thus, ineligible for benefits. Plaintiff avers that, *inter alia*, the ALJ improperly weighed medical opinion evidence and that the Commissioner's decision should be reversed and remanded with instructions to award benefits pursuant to 42 U.S.C. § 405(g).

Defendant does not dispute that Plaintiff is entitled to judgment and some kind of remand—instead, the dispute here is whether Plaintiff's case should be remanded for further proceedings or, instead, with instructions to award benefits. That question hinges on whether there exists any need for further record development or any doubt as to her disability. For the reasons explained below, further record development is unnecessary: her treating physicians' opinions sufficiently establishes disability. The matter is therefore remanded for calculation and award of benefits.

**II. BACKGROUND**

The history of this matter stretches a decade into the past. Plaintiff first filed for Title II disability benefits and Title XVI supplemental security income in 2015, at the age of 42, claiming to suffer from high blood pressure, fibromyalgia, chronic pain, muscle spasms, torn ligaments, nerve damage, depression, and anxiety beginning December 29, 2014. The SSA denied her claim initially and again on reconsideration in February 2016. An administrative law judge ("ALJ") subsequently held a hearing and, in January 2018, issued an unfavorable decision. After Plaintiff appealed that decision, the Appeals Council remanded the case for further hearing. That hearing occurred in July 2019 before the same ALJ, and a supplemental hearing followed in December 2019. The ALJ again issued an unfavorable decision in March 2020. Plaintiff once more sought review, this time to no avail—the Appeals Council denied her request. At that point, Plaintiff appealed to a federal district court.

Upon reviewing the administrative record, the district court concluded that the ALJ had erred. The error—determining that fibromyalgia is not a medically determinable impairment (when in fact, it is)—was not harmless because it "could impact other aspects of the ALJ's decision, including evaluation of the medical opinion evidence, evaluation of Plaintiff's credibility, medical equivalence findings, and the RFC [residual function capacity] assessment." *Sawanya S. v. Kijakazi*, No. 20-cv-09302-DMR, 2022 WL 4086553, at *5 (N.D. Cal. Sept. 6, 2022). As a result, the court remanded the case to the SSA for further proceedings. In effectuating that remand, the Appeals Council consolidated an additional claim that Plaintiff filed in 2020 with her existing 2015 claim.

Before a new ALJ, Plaintiff amended her alleged onset date of disability to April 1, 2015, commensurate with—in the ALJ's words—"the date when she stopped engaging in substantial gainful activity." Administrative Record ("AR") 1321. The ALJ ultimately determined that Plaintiff was disabled, but only as of July 12, 2023—not prior. Key to that determination was the fact that Plaintiff worked, briefly, at various times during the claim period, and the ALJ's finding that her mental impairments were less severe than her doctors thought. This appeal follows.

### III. LEGAL STANDARD

Under 42 U.S.C. § 405(g), a district court has jurisdiction to review the Commissioner's final decision denying benefits under the SSA. An ALJ's decision to that effect must be affirmed if it is supported by substantial evidence and is free of legal error. *Beltran v. Astrue*, 700 F.3d 386, 388 (9th Cir. 2012). Substantial evidence is defined as "more than a mere scintilla but less than a preponderance—it is such relevant evidence that a reasonable mind might accept as adequate to support the conclusion." *Moncada v. Chater*, 60 F.3d 521, 523 (9th Cir. 1995) (per curiam). In determining whether a decision is supported by substantial evidence, the court must examine the administrative record as a whole, considering all of the facts. *Drouin v. Sullivan*, 966 F.2d 1255, 1257 (9th Cir. 1992). If the evidence supports more than one rational interpretation, the court must defer to the ALJ's decision. *Id.* at 1258. "[I]f additional proceedings can remedy defects in the original administrative proceeding, a social security case should be remanded." *Garrison v. Colvin*, 759 F.3d 995, 1019 (9th Cir. 2014) (internal quotation marks and citation omitted).

### IV. DISCUSSION

Plaintiff contends that a remand for benefits is warranted. First, she argues that the ALJ improperly weighed opinions by her treating and examining physicians, both as to her mental and physical capabilities. The ALJ next compounded that error, Plaintiff contends, by determining that she lacks credibility due to inconsistencies in the record without substantial evidence for that conclusion. Because she believes that, but for the ALJ's errors, she would be deemed disabled, Plaintiff urges the court to remand for an award of benefits, invoking the "credit as true" rule under which such order for award may issue.

The Commissioner agrees that remand is warranted in this case yet argues for further proceedings—not an award of benefits. In Defendant's view, the record is not sufficiently clear, and Plaintiff's disability remains so doubtful, that she cannot satisfy the credit as true rule. This argument is unpersuasive, for the reasons explained *infra*, so the remand in this case is with an order for the calculation and awarding of benefits.

### A. Standard for Evaluating Disability

A person is "disabled" for the purposes of receiving Social Security benefits if she is unable to engage in any substantial gainful activity due to a medically determinable physical or mental impairment which is expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 423(d)(1)(A). In evaluating whether a claimant is disabled, the Commissioner must follow a five-step sequential inquiry. 20 C.F.R. §§ 404.1520, 416.920; *Lester v. Chater*, 81 F.3d 821, 828 n.5 (9th Cir. 1995), *as amended (*Apr. 9, 1996) (superseded by statute on other grounds). The burden rests on the claimant to prove: (1) she is not working; (2) she has a severe medically determinable impairment that is expected to last more than twelve months; and either (3) that impairment is severe enough to meet or equal an impairment listed as *a priori* disabling without further vocational-medical evidence; or (4) the impairment causes such functional limitations that she cannot do her past relevant work. 20 C.F.R. § 404.1520(a)(4)(i)–(iv).

If the claimant successfully proves she cannot do her past work, then the burden shifts to the Commissioner to show at step five that the claimant can perform other work that exists in significant numbers in the economy; otherwise, the claimant will be found disabled. *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1222 (9th Cir. 2009). Moreover, if the claimant's impairment does not meet or equal a listed impairment under step three, the ALJ must determine the claimant's residual functional capacity ("RFC") and apply it during steps four and five to make a final disability determination. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1034 (9th Cir. 2007) (citing 20 C.F.R. § 404.1520(a)(4), which describes the five-step process). An individual's RFC is the most she can still do despite her limitations. *See* 20 C.F.R. § 416.945(a)(1).

### B. ALJ Application of Standard

The ALJ followed the above five-step inquiry. At step one, she found that Plaintiff had not engaged in substantial gainful activity for continuous 12-month periods within the claimed period. She simultaneously concluded, however, that Plaintiff *did* engage in substantial gainful activity for the following periods: (1) second quarter 2016, (2) fourth quarter 2016, (3) first quarter 2017; (4)

second quarter 2017; and (5) July through November 2022.  She based that conclusion on the fact that Plaintiff earned enough money during those stints.  *See* AR 1323.

At step two, the ALJ determined that Plaintiff suffers from 10 severe impairments: (1) major depressive disorder, (2) generalized anxiety disorder, (3) post-traumatic stress disorder, (4) postherpetic neuralgia right, (5) paresthesia, (6) chronic pain disorder, (7) status post-right shoulder arthroscopy; (8) osteoarthritis of the right shoulder, (9) status post-right ankle arthroscopy, and (10) fibromyalgia.  Those impairments significantly limit Plaintiff's ability to perform basic work activities.  The ALJ further determined, however, that other impairments—including narcissistic, dependent, sadistic, and negativistic personality traits; asthma; cervical dysplasia; hypertension; low back pain; and cognitive disorder—"cause only a slight abnormality that would have no more than a minimal effect on her ability to work." AR 1324.  The ALJ noted that, as to Plaintiff's personality disorder, although it was not severe, Plaintiff would nevertheless have moderate limitations in several key criteria related social functioning.

At step three, the ALJ concluded "[t]here is no substantial evidence present in the record to indicate that the claimant's impairments, either singly or in combination, have ever met or medically equaled the requirements of a listed impairment." AR 1325; *see also* 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, and 416.926.  As to Plaintiff's right shoulder, the ALJ found no evidence demonstrating a documented need for assistive devices or an inability to use both of her upper extremities to initiate, sustain, and complete work-related activities.  As to her postherpetic neuralgia, the ALJ found that Plaintiff did not have disorganization of motor function in two extremities that limit her ability to stand from a seated position or to balance while upright.

As to Plaintiff's various mental impairments, even considered in combination, the ALJ found they did not meet or medically equal the criteria of listings 12.04, 12.06, or 12.15.  Under what is known as "paragraph B," an ALJ must consider whether combined impairments result in at least one extreme or two marked limitations in a broad area of functions, including understanding, remembering or applying information; interacting with others; concentrating,

persisting, or maintaining pace; or adapting or managing themselves. A marked limitation would mean seriously limited function, whereas extreme limitation is an outright inability to function independently, appropriately or effectively on a sustained basis. The ALJ found only a moderate limitation in Plaintiff's ability to process information, noting record evidence that her memory seemed unremarkable during certain doctor visits. The ALJ also found only a moderate limitation in interacting with others, highlight that she performs as a jazz singer sometimes and also attends some social events. As to Plaintiff's ability to concentrate, the ALJ found a moderate limitation, noting her time working during the claimed period. With respect to her self-management, the ALJ further found no more than moderate limitation, again citing her work history.

At step four, the ALJ determined that Plaintiff had the residual functional capacity ("RFC") to perform a limited range of sedentary work: she could frequently and occasionally lift and carry up to 10 pounds; sit for 2 hours at a time for a total of 6 hours in an 8-hour workday; stand for 30 minutes at a time and walk for 15 minutes at a time for up to 2 hours in an 8-hour workday with normal breaks. She can occasionally reach in all directions with her upper extremities, including fine motor skills. Plaintiff was also deemed able to "understand, remember, and carry out simple, routine tasks with no more than occasional interaction with supervisors and coworkers and the public." AR 1327. Key to this determination, the ALJ noted, was the fact that Plaintiff had worked during the claimed period. The ALJ also acknowledged giving the greatest weight to opinion evidence to a medical expert who had not treated the patient, while giving substantially less weight to several physicians who treated Plaintiff and opined that her physical and mental limitations were severely or markedly limiting.

Ultimately, although the ALJ determined that Plaintiff cannot perform her past relevant work, there remained—at least until July 12, 2023—a significant number of jobs in the national economy that the ALJ determined Plaintiff to be capable of performing—including table worker, document preparer, or order clerk. As of that date, however, there were no longer sufficient jobs for Plaintiff's capabilities such that she is disabled.

### C. ALJ Errors

Plaintiff alleges numerous errors in the ALJ's application of the requisite five-step process. In opposition, Defendant does not directly contest any of the below averments. "In failing to respond to the merits of Plaintiff's claims, the Commissioner has waived those issues." *See, e.g.*, *Sara H. v. Comm'r Soc. Sec. Admin.*, No. 2:23-cv-649-CL, 2024 WL 3065903, at *5 (D. Or. June 20, 2024); *see also Jeffrey C. v. Kijakazi*, No. 3:22-cv-79-SI, 2023 WL 4760603, at *3 (D. Or. July 26, 2023) ("The Government's failure to defend Plaintiff's allegations of error . . . is a concession of those alleged errors."). As a result, the below alleged errors are deemed conceded.

*1. Weighing Medical Evidence of Mental Health*

The ALJ erred in evaluating medical evidence relevant to steps two, three, and four.

"As a general rule, more weight should be given to the opinion of a treating source than to the opinion of doctors who do not treat the claimant." *Lester*, 81 F.3d at 830; *but see* 20 C.F.R. § 404.1520c (precluding such deference for claims filed on or after March 27, 2017). For a claim like Plaintiff's, filed before 2017, if a treating physician's opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record, [it will be given] controlling weight." 20 C.F.R. § 404.1527(c)(2). To this end, "clear and convincing" reasons are required to reject the treating doctor's conclusions. *Embrey v. Bowen*, 849 F.2d 418, 422 (9th Cir.1988).

The ALJ here appears to have discredited opinions of treating therapists Dr. Margarita Orona and Roya Sakhai, who jointly completed a mental impairment questionnaire about Plaintiff's mental health in 2017 and found her to have marked and extreme limitations in her abilities to concentrate and to adapt or manage herself. AR 1937–38. Orona subsequently diagnosed Plaintiff with PTSD based on her history of domestic violence and sexual abuse, AR 1955, noting that Plaintiff suffered severe symptoms of anxiety and affect regulation as well as moderate impulsivity, communication, and depressive symptoms. AR 1954. The ALJ disagreed with Orona and Sakhai's findings that Plaintiff has marked limitations, writing "the overall

medical evidence of record indicates that, with treatment, the claimant has moderate limitations in all mental functioning areas." AR 1330.  Defendant apparently concedes that such discrediting of a treating physician, without more substantial reasoning, is error.

The ALJ also wrongly determined that Plaintiff's work following the alleged onset date contradicted Orona and Sakhai's opinion, *see* AR 1330.  During the relevant time period, Plaintiff earned enough money to qualify as substantial gainful activity ("SGA") at Telecom only in the month of April 2015, when her employer told her not to come back until she was healed from a recent ankle surgery.  *See* AR 1410–11.  "Ordinarily, work you have done will not show that you are able to do substantial gainful activity if, after you worked for a period of 6 months or less, your impairment forced you to stop working or to reduce the amount of work you do so that your earnings from such work fall below the substantial gainful activity earnings level[.]" 20 C.F.R. § 404.1574(c)(1).  Plaintiff's brief return to Telecom in September 2015 to earn $512.58 did not rise to the level of SGA, moreover, and although she returned again for three months in 2016, Plaintiff was ultimately laid off after her impairments hindered her work abilities.  *See* AR 1412–15.  Later in 2016, Plaintiff earned enough to qualify as gainfully employed from the Better Business Bureau, but only for four months before having to switch to part-time work and ultimately finding herself terminated due to her impaired productivity.  AR 1389.  Plaintiff worked again in 2022 in a work-from-home context for a production company.  That employment lasted just five months, and although it proved to be one of her most lucrative—providing payment for 12 hours of work per day, even when less than that was actually worked—Plaintiff was only able to participate because she could do it from home, sometimes lying down in bed, and was allowed to work fewer than three hours per day with substantial breaks.  *See* AR 1415–18.  When that job concluded in fewer than six months, Plaintiff was unable to continue in a similar capacity due to her various impairments.

Altogether, the record demonstrates that Plaintiff's brief work history post-April 2015 does not contradict Orona and Sakhai's opinions.  "It does not follow from the fact that a claimant tried to work for a short period of time and, because of h[er] impairments, failed, that [s]he did not then experience pain and limitations severe enough to preclude h[er] from *maintaining* substantial

gainful employment.  Indeed, we have suggested that similar evidence that a claimant tried to work and failed actually *supported* h[er] allegations of disabling pain." *Lingenfelter*, 504 F.3d at 1038.  Under that Ninth Circuit precedent, the ALJ erred by discrediting medical opinions about the severity of Plaintiff's impairments based on her brief and unsuccessful work history.

In addition to the above missteps, the ALJ erred by giving only partial weight to the opinions of an examining psychologist, Dr. Katherine Wiebe, who evaluated Plaintiff in 2015 and again in 2021.  Those opinions deserved greater weight because their source is an examining doctor, their conclusions have support from medical signs and objective testing, and they are consistent with the overall record.  *See* 20 C.F.R. § 416.927.  The ALJ seemingly disagreed with Wiebe's determination that Plaintiff suffers marked limitations in her abilities to respond appropriately to routine work challenges, to complete a normal workday or week without interruptions from psychological symptoms, and to maintain regular attendance and punctuality requirements.  As support, the ALJ claimed that the overall medical evidence demonstrated that Plaintiff only has moderate limitations, not marked ones.  In fact, the record is replete with numerous opinions that corroborate Wiebe's—including Orona and Sakhai's—not to mention Plaintiff's history of repeat failed attempts to hold down a job.

The ALJ also wrongly discredited conclusions by medical expert Dr. Tonia Porchia, who determined that Plaintiff met Listing 12.04 (for depressive, bipolar, and related disorders), 12.06 (for anxiety and obsessive-compulsive disorders) and 12.15 (for trauma and stress related disorders) based on her childhood and adult trauma and abuse experiences).  Porchia concluded that these listings were met as early as December 2014, linking Plaintiff's impaired mental capacities to her anxiety, depression, and PTSD.  The ALJ, however, determined that Porchia's opinions lacked support of medical evidence in the record.  The ALJ focused on Plaintiff's generally normal mental status examinations as the basis for discrediting Porchia's conclusions—as well as related conclusions by another expert and two consultative examiners—despite having previously recognized that those exams came during routine psychotherapy appointments.  A "'normal' designation of Plaintiff's 'mental status' is not only ambiguous but is also not dispositive of Plaintiff's mental health as a whole . . . Plaintiff having a composed and 'normal'

demeanor during doctor visits does not preclude her from experiencing anxiety and depression in other contexts." *Moody v. Berryhill*, No. 16-cv-3646-JSC, 2017 WL 3215353, at *10 (N.D. Cal. July 28, 2017) (internal citations and quotation marks omitted). *J.F. v. O'Malley*, No. 23-cv-00537-JST, 2024 WL 1540727 at *9 (N.D. Cal. April 8, 2024) (holding that it was error for the ALJ to use normal mental status exams as a reason to discredit Plaintiff's testimony because it mischaracterized the medical records as a whole).

Had the ALJ properly credited the opinions of the above experts and physicians, she would have been required to find that Plaintiff's mental impairments met a listing as opined by Porchia and supported by the opinions of Wiebe, Orona and Sakhai.

   2. *Weighing Medical Evidence of Physical Health*

Plaintiff reprises many of the above claims with respect to the ALJ's assessment of physical health medical opinions. The ALJ only gave partial weight to Plaintiff's treating physician, Omar Staples, who submitted a 2019 statement that her fibromyalgia, back pain, and shoulder pain limited Plaintiff to no more than sedentary work in which she would likely be absent three times per month and off task more than 33% of each day. The ALJ discredited Staples' conclusion "based on the claimant's ability to work after her alleged onset date." AR 1329. The ALJ instead adopted the opinion of an expert who concluded that Plaintiff could sit for six hours per day and stand for two hours per day.

Under *Lester*, the ALJ may not reject the opinion of examining and treating doctors to favor contradicting opinions by non-examining or treating doctors "without 'specific and legitimate' reasons supported by substantial evidence in the record." 81 F.3d at 831 n.8. The reasons provided here were not up to that standard. The first was that Plaintiff's work history contradicts Staples' opinion; as described *supra*, however, that history actually supports his conclusion that Plaintiff can only do sedentary work when able to be off task more than a third of the time and absent at least three times per month. Plaintiff testified that she was fired from her job at Telecom for not being able to stand and sit and walk, and that she was often absent, late to work, or requesting unscheduled breaks during her time at the Better Business Bureau. The second reason was the ALJ's determination that the medical record was not consistent with

Staples' opinion, but that is refuted by the record's numerous reports of, *inter alia*, her well-documented back pain radiating to her lower extremities.

### 3. Consistency Determination as to Plaintiff

Plaintiff next contends that the ALJ erred in concluding that Plaintiff's subjective complaints and the limitations her doctors observed "are not entirely consistent with the medical evidence of record." AR 1331. Plaintiff argues that, in cases where the medical evidence establishes an objective basis for the symptoms and there is no affirmative evidence of malingering, the ALJ's reasons for rejecting self-reported symptom testimony must be "clear and convincing." *Gallant v. Heckler*, 753 F.2d 1450, 1455 (9th Cir. 1984). She also cites Social Security Administration SSR16-3p, which emphasizes that inconsistency between a claimant's allegations of disability and evidence in the record may not be used broadly to discredit the claimant's credibility but rather only insofar as the evidence contradicts a specific assertion relevant to the disability determination. *See* SSR 16-3p, 2016 WL 1119029, at *10 (Mar. 16, 2016). Because the ALJ did not properly credit the opinions of Plaintiff's medical experts and doctors, the ALJ's conclusion as to the medical evidence of record is necessarily incorrect—in fact, the record *is* consistent with Plaintiff's contentions that her symptoms and impairments prevent her from working.

### 4. Paragraph B Criteria Findings

An ALJ must determine whether a claimant's condition meets or equals a given listing. *See* 20 C.F.R. §§ 416.920, 416.925, 416.926. Here, Defendant concedes the error in the ALJ's conclusion that Plaintiff did not have any impairment or any combination that met or equaled any necessary listing; the opinions of Wiebe, Porchia, Orona, and Sakhai, all supported the finding that her impairments were medically equal to listings 12.04, 12.06, and 12.15. Because no substantial evidence supported the ALJ's determination, it was error.

### 5. RFP Finding

Finally, Plaintiff asserts that the ALJ failed to assess her residual functioning capacity in light of all relevant evidence as required. *See* 20 C.F.R. §§ 416.927(b), 416.945; SSR 96-5p, 96-6p. As the Commissioner now concedes, the ALJ overly credited the opinions of non-treating and

non-examining state agency doctors who gave opinions at initial and reconsideration stages that predated the full development of the record. *See* AR 108, 145.

### D. Credit As True Rule

Plaintiff argues that the "credit-as-true rule" is satisfied such that remand for payment of benefits is in order. Where "(1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand," the reviewing court should award benefits rather than remand for further proceedings. *Garrison v. Colvin*, 759 F.3d 995, 1020 (9th Cir. 2014).

This case satisfies each of the credit-as-true factors.

#### 1. Further Record Development

As to the first credit-as-true factor, the record here is fully developed. The claims involve a closed period from the past that has been fully examined over the course of this long and winding litigation.

The Commissioner contends that there remain ambiguities in the record relevant to the ultimate disability determination such that it is not developed enough. The cited examples are not compelling. For example, the fact that Plaintiff complains about her memory while providers found it to be intact is not a relevant contradiction; those notes about mental status were snippets of a doctor's visit, not a mental health diagnostic test or examination. As for Plaintiff's jazz singing, she clearly explained at the relevant hearing that it was rare, normally only a song or two, and more like singing at church—"It's not a whole show," "not on a schedule." AR 39-40. She further clarified that she was "in strenuous pain" when performing, and that she stopped performing because of her pain. AR 41. The Commissioner also claims the record shows contradiction between Plaintiff's claimed mental impairments and a series of relatively normal mental status exams. Yet, again, such slight contradictions do not warrant further record development, particularly here, where Plaintiff has engaged in proceedings before two distinct ALJs, the Appeals Council, and two different federal district courts.

### 2. Error in Rejecting Evidence

Second, as discussed above, the ALJ has failed to provide legally sufficient reasons to reject opinion and testimonial evidence, as Defendant concedes and as described *supra*.

### 3. Plaintiff Is Disabled

Finally, if credited as true, Plaintiff's evidence establishes that a finding of disability is warranted in this case, with a start date of April 2015. Porchia opined that Plaintiff met the criteria of listings 12.04, 12.06, and 12.15, with sufficiently marked limitations to satisfy Paragraph B. Orona and Sakhai opined that Plaintiff has marked to extreme limitations in concentration and managing her psychological symptoms. Weibe also identified marked limitations in Plaintiff's ability to conduct herself appropriately at work. Had this evidence been correctly weighed, the ALJ would have had to conclude, in keeping with the vocational expert's testimony, that there are not significant numbers of jobs in the national economy that Plaintiff can perform. *See* AR 1437 (stating no work for a person, such as Plaintiff, who is "limited to simple, routine tasks with occasional interaction with coworkers, supervisors, and the public, and [who] would also need three extra breaks per day of ten minutes each in addition to the lunch and the two standard breaks; [who] would also need extra reminders from supervisors three times a day in order to do simple, routine tasks"); *see also* AR 1371–74 (Porchia noting that "it would be incredibly difficult for [Plaintiff] to manage her symptoms and herself in a work environment" during the claimed period, even if she received routine reminders and extra breaks).

## V. CONCLUSION

As the credit-as-true factors each support remand for an award of benefits, and "there is no serious doubt that, based on the record as a whole, [Plaintiff] is in fact disabled," *Revels*, 874 F.3d at 669 (internal quotation marks omitted), the matter is remanded to the ALJ for the calculation and award of benefits.

**IT IS SO ORDERED**.

Dated: August 7, 2025

_____
RICHARD SEEBORG
Chief United States District Judge